Next case is Peter Henrich Pedersen v. United Patents, 2024-2090. Good morning, Mr. Greenspan. Thank you. Good morning, Your Honors. May it please the Court. The Board found Funk discloses claim limitation 1.4, but substantial evidence does not support that conclusion. Two reasons why. First, Funk's delivery parameters are not messenger-specific. Claim 1.4 requires, and I'm going to quote from the claim, delivery parameters specified by a recipient of where, when, and how specific types of messages from specific messengers are delivered to the recipient. We told the Board that Funk lacks this at Appendix 350, also 423-24. Since Funk is missing profiles organized on, quote, a one-to-one basis between recipients and messengers. The 920 patent teaches this at column 9, starting line 5. A recipient selects a messenger, then specifies preferred delivery parameters for that messenger. That is messenger-specific profiling. But look at Funk's Figure 8. This is what the Board relied on. Sections 808, 810, and 812 contain timing, composition, and formatting parameters. These are sections applying to content types. They're not organized by messenger. That figure is, by the way, on Appendix page 885. That's the fatal gap. The Board never found that parameters were specified per messenger. The Board just repeated petitioner's contentions, did not independently analyze Funk's structure, and without per-messenger profiling in Funk, there's no substantial evidence to support obviousness. Then the second point to make, Your Honors. Information sources are not messengers in the first place. Just ponder that for a second. It's an information source, as described in Funk. It's not a messenger. Funk's processor receives information from information sources and stores that information, so the processor is the active one. The processor does the receiving. The sources are passive. That's why they're called sources. You're the source of information that you're presenting to us, but aren't you the messenger? That's a very good analogy, and I wish I had thought of that because that supports our case. I'm the source. I'm sorry. Let me go back. I'm the messenger, but the source is, let's say, my appellate briefing. My appellate, well, that's perhaps also bad. But the source is the case law and the factual record. So I'm the messenger to Your Honors. We created an analogy in our briefing to help convey this point. This court, the Court of Appeals for the Federal Circuit, every day sends out ECF messages to the bar, to the people registered for a particular case. Every now and then, those ECF messages are going to contain a decision that cites, for example, the Supreme Court's Markman decision. So under unified patents theory, under the board's theory, the Supreme Court is a messenger in that instance of that ECF email, just because something that originated way back when from a Supreme Court writing was used as a resource for composing this court's message. But you're a messenger of what you know. And you are, therefore, the source of what you're transmitting to us. Not necessarily the ultimate source, but neither is the Wall Street Journal. Well, in this instance, the Wall Street Journal is mentioned in funk, so let's go there. The Wall Street Journal is never sending any information to a recipient in funk. The recipients are getting information from the intermediate aggregator. And an excellent point here is that the Wall Street Journal, there's no disclosure in funk that the Wall Street Journal composes any kind of capsule or package with an address on it, or with a recipient ID on it, that gets deposited into the intermediate system, and then is, on whatever basis, then delivered to the recipient. So in other words, the Wall Street Journal never provides a recipient ID, no address C. We made this point in several places in the record. For example, the record at the oral hearing before the PTAB is quoted on page 33 of the appendix where we made this point. We made this point at page 427 of the record. That's a surreply. So funk, therefore, just doesn't disclose anything that could be considered a messenger in the first place that is subject to profiling. So funk does disclose. I don't want to over-argue this. Funk does disclose one messenger in its entirety, and that's this little blurb. I think it's reference numeral 310 on the bottom of figure 3. That's a message that's just tacked on for unfiltered delivery, unprofiled delivery, from Dave S., who sends a message to John. But even in that instance, no recipient profile controls that delivery. And for information sources like Reuters or weather services, funk never uses the terminology send. It only uses the terminology send for this completely unprofiled, unfiltered, single message. So in conclusion, two independent gaps. Funk's parameters are not per messenger. We see that in figure 8 and discussion about figure 8. And information sources do not send. The board pointed to no evidence supporting either element. So therefore, we request reversal, and I'd like to reserve the remainder of my time for rebuttal. We will send it for you, Ms. Hughes. Good morning, Your Honors, and may it please the Court. My name is Kelly Hughes, and I'm here on behalf of Unified Patents. Today we're discussing two issues relating to limitation 1.4 of Funk. And the first issue is whether Funk's information sources are messengers, and the second is whether Funk discloses the claim delivery parameters recited by the claim. Starting with the first issue, Funk discloses two types of messengers, and this was found by the board, information sources and third parties, which the patent owner has acknowledged are messengers. Focusing on the information sources, these are entities like the Wall Street Journal or Associated Press, and these information sources send information to Funk's internal processing system. And the internal processing system receives that information and then stores them in a database to communicate them later to recipients. For example, Funk discloses that the internal processing system has a database and that this database is dynamically updated by the information source. And this can be found at Appendix 894, Column 743. And so this demonstrates that these information sources are the ones sending information to Funk. Patent owners' own citations actually undermine the argument that these information sources are being retrieved from, because it teaches that Funk's processor system, the central processor, receives the information. And if that information is being received, then it has been sent by the information source. And the patent owner has also argued in the briefing that this disclosure of the dynamic updating doesn't apply to the limitation because the board specifically addressed it in a different limitation, Claim 1.9. But that's enough for substantial evidence. Claim 1.9, all the limitations of Funk relate to messengers, and so the board discussing the messenger functionality and a later claim limitation relating to the messenger actions is appropriate. And I'd like to turn to the second issue, unless there's any questions. The second issue is whether Funk discloses the claim delivery parameters. But Funk discloses that a recipient creates a configuration profile, and they can indicate the information sources that they'd like to receive information from. They can indicate the content type and where, when, and how those messages are received. Patent owner is raising a new interpretation of this claim on appeal. And I just want to note that because this is a new interpretation being raised for the first time, it's not necessary for the court to address it. However, if the court does choose to address this interpretation, it should be rejected. Patent owner seems to be arguing that the prior art needs was identifying separately where, when, and how for every type messenger pair in the art. And this essentially results in a requirement that you are indicating separately two types of messages and separately where, when, and how for those messages and messengers. This is not required by the claim. This interpretation departs from the plain meaning of the claim, and it improperly narrows the limitation. And it's not supported by the specification. Appendix 65, 765, the specification of the 920 patent recites a broader embodiment where a user can enter one or more sets of profile data. And the patent refers to this as message profiles. And you can, in fact, indicate where, when, and how for each of these message profiles. But the patent also teaches that these message profiles can indicate one or more types of messages and one or more types of messengers. So the patent discloses that you can indicate one messenger profile that has multiple messengers, multiple types of messages, and you can indicate where, when, and how that's delivered. And that's exactly what Funk does. Patent owner's interpretation would rule out this embodiment that's recited in the specification. And even looking at the plain language of the term, the language is very broad. The language just requires that you have profile data, not certain sets of profile data, just profile data that indicates delivery parameters of where, when, and how specific types of messages from specific messengers are delivered to the recipient. And if there's no further questions on that, Your Honor, I would like to yield my time. You would like to sit down? Huh? You would like to sit down? Yes. Thank you. Mr. Green's phone has some rebuttal time. I won't take very much, Your Honor. I'm pointing now the court to page 885 of the record. That is Funk's figure 8. This is where the board says there is messenger-specific profiling. I'll just read through it. 802, identification. 804, user background information. 806, database description information. 808, timing information. 810, email composition information. 812, formatting information. There's nothing in this figure, and there's nothing in the description about this figure, that says that the profiling for delivery parameters created by the recipient is on a messenger-specific basis. That is the heart of our appeal, and that is why this court should reverse. Thank you, counsel, both counsel. The case is submitted.